PEARL PURVIS, Appellant, v. ALEX P. HARDIN.—122 S. W. (2d) 936.

Court en Banc, December 20, 1938.

*Alcid Bowers* for appellant.

*K. D. Cross* and *Breit & Roberts* for respondent.

DOUGLAS, J.—This is an action to establish a trust in land and for a partition of the land. Appellant (plaintiff below) is the sister of the respondent and of Floyd F. Hardin, who was joined as a

party defendant, but who filed no answer, and seems to have been dropped as a party. This action was filed in the Circuit Court of Andrew County and was sent on change of venue to Buchanan County.

The petition is in two counts. The first count, in equity, alleges that plaintiff was a tenant on a farm in Andrew County, which the owner offered to sell to her for $5,000. Thereupon she made an oral agreement with her two brothers to buy the farm, hold it and sell it for a profit. The defendant was to furnish the entire purchase price, which was to be repaid him upon a sale, and any excess received was to be divided equally between the three parties. Pursuant to this agreement, the defendant advanced $5,000 and, on January 22, 1934, the farm was conveyed to Floyd F. Hardin, who was to hold it in trust for the benefit of the three parties until a sale could be made of such farm at a substantial profit. Shortly thereafter on February 6, 1934, the defendant, in violation of his contract and to defraud his sister, caused his brother Floyd to quitclaim the property to him; that offers of $9,000 and $12,000 had been made for the farm, which defendant has refused; and that defendant now claims to own the farm and denies that the other parties have any interest in it. The prayer asks that the quitclaim deed be cancelled and that defendant, Floyd F. Hardin, be vested with the title to the farm in trust for the equal benefit of the three parties, subject to the $5,000 advanced by the respondent.

The second count is in partition asking that the farm be sold; that from the proceeds defendant be paid $5,000; that plaintiff be paid $10 which she expended for the examination of the title; and that the remainder be divided equally between the three parties.

Defendant answered by a general denial, first admitting that he paid the purchase price. The court found that defendant was the sole owner of the farm and that plaintiff had no interest in it. Upon the application of the defendant the court appointed a receiver to take possession of the farm and to manage it during the pendency of this appeal. Plaintiff filed a motion to revoke the appointment of the receiver, which the court overruled, and the plaintiff has appealed jointly from both the latter action of the court and the judgment.

The evidence shows that plaintiff occupied the farm as a tenant in March, 1933; that in December, 1933, while negotiating for an extension of her lease, the owner told her that the farm could be purchased at a price of $5,000. Not being in a position to purchase the farm herself, she then went to her brother Floyd to engage his help in finding a purchaser, believing that the farm could be resold quickly at a profit, on the understanding that they would divide any such profit between the two of them. A certain period of time was obtained from the owner in which to find a purchaser and it was agreed that

the property, in the event of a deal, would be conveyed to Floyd Hardin. A tentative offer was received from a third party in the amount of $5,500, but this was not consummated. Being unable to make a deal, on the last day in which they could make the purchase, namely January 22, 1934, the defendant, at the instance of Floyd, advanced the purchase price. The property was taken in Floyd's name because of the verbal agreement with the owners. Some fifteen days later Floyd conveyed the property to the defendant. Plaintiff testified she heard of this conveyance some two or three weeks after it occurred. The evidence does not show that she made any objection to it until the filing of this suit on September 8, 1936. Floyd Hardin was called as a witness by the plaintiff and he testified that there was no agreement between him, his sister and brother, as alleged by the plaintiff. As to the conveyance of the farm to his brother, he testified:

"Q. You held the title some fifteen days? A. That's right.

"Q. The twenty-second to the sixth of February? A. Yes, sir.

"Q. Then you gave him a deed for it? A. Yes, sir.

"Q. What was said there at the time of making the deed as to who would take the title to the farm at that time? A. Well, I don't know that there was anything said, but I told him when he bought it, when he wanted to buy, I didn't have anything to do with the farm, that it was his.

"Q. How did the deed happen to be made to you? A. I had a verbal agreement to buy the farm."

There was no substantial evidence as to the value of the farm except that immediately previous to the time when it was purchased an offer of $5,500 had been made, which offer was recalled. The offers to purchase, which plaintiff alleges in her petition, were not substantiated and one was denied by the party alleged to have made the offer. The evidence shows that plaintiff was permitted to have full use of the farm from March, 1934, to March, 1935, for which she agreed to make certain improvements. The following year she occupied the farm on a share crop basis; the next year under a written lease from defendant she was limited to approximately one-half the farm on a rental basis, the other half being leased by defendant to a third party. It was also shown, in certain documents, plaintiff named defendant as the owner of the farm and herself as the tenant.

Plaintiff claims that under the purchase agreement a resulting trust was created by operation of law in plaintiff's favor, which gives her an equitable title to one-third of the land. In order to establish a trust by parol and to engraft it on the legal title to real estate, we have held that the mere preponderance of the evidence is insufficient and that a higher degree is necessary. [Waddle v. Frazier, 245 Mo. 391, 151 S. W. 87, 89; Adams v. Burns, 96 Mo. 361, 10 S. W. 26.]

The evidence must be "so clear, cogent, positive and convincing as to exclude every reasonable doubt from the Chancellor's mind." [Norton v. Norton (Mo.), 43 S. W. (2d) 1024, and see 23 A. L. R. 1052.] Plaintiff's evidence has not met such requirement.

The cases on which appellant relies to establish a resulting trust all lead to the conclusion that the test is the true ownership of the consideration upon which title rests. An examination of them shows the following:

Cason v. Cason, 28 Mo. 47: Investment by a husband of his wife's money in property created a resulting trust in favor of his wife. Cloud v. Ivie, 28 Mo. 578: The entry of land by one in his own name with the money of another, creates a resulting trust. Shaw v. Shaw, 86 Mo. 594: The controlling question is the establishment of the ownership of the purchase money. Plumb v. Cooper, 121 Mo. 668, 26 S. W. 678: A trust results in favor of the party who paid for the land. Condit v. Maxwell, 142 Mo. 266, 44 S. W. 467: A trust is implied from the fact that the purchase money was paid by the cestui que trust. Butler v. Carpenter, 163 Mo. 597, 63 S. W. 823: When the answer discloses that the purchase price of the land or a part thereof, was paid by one party and the legal title thereto taken in the name of another, a trust by operation of law arises from that fact in favor of the party making the payment. Bryan v. McCaskill, 284 Mo. 583, 225 S. W. 682: The facts show that a real money consideration was invested by him who claimed title through a resulting trust.

It is apparent that under the facts in the instant case, none of the cases relied on by appellant aid her claim. She admits that the entire purchase price was advanced by the defendant. There is no substantial evidence that the property was worth more than the amount paid for it. In addition, the oral agreement which she claims existed between the parties can furnish no basis for a resulting trust. "A resulting trust arises by operation of law from the facts in the case, and never by operation of an agreement; from what the parties do, and never what they agree to do. Where an alleged trust must be established by agreement, the agreement must be in writing under Section 2263, Revised Statutes 1919 (3104, R. S. 1929) and it cannot be a resulting trust under Section 2264 (3105, R. S. 1929)." [Ebert v. Myers, 320 Mo. 804, 9 S. W. (2d) 1066; Bender v. Bender, 281 Mo. 473, 220 S. W. 929; Thomson v. Thomson (Mo.), 211 S. W. 52; Heil v. Heil, 184 Mo. 665, 84 S. W. 45; Price v. Kane, 112 Mo. 412, 20 S. W. 609.] The respondent cites the case of Long v. Conrad (Mo.), 42 S. W. (2d) 357, in which the facts are strikingly similar to the ones in the instant case. It is there alleged that land was bought by the plaintiff and defendant, that the plaintiff had no money, so the entire purchase price was furnished by defendant with the under-

standing that when the property was sold defendant would be repaid the amount he advanced; that plaintiff and defendant would be joint owners of the remaining proceeds; that defendant, with intent to defraud plaintiff of his interest in the land, took title in his name alone; and that the actual value of the land was in excess of the price paid. We held that such facts created no resulting trust, or no express trust because the same was not in writing, or no constructive trust. We said: "Plaintiff's testimony points to an intention and understanding on his part that he was to share only in the profits, if any, upon sale of the land, as in effect stated in one place in his petition. If such was the agreement, even had it been in writing it would not have made defendant trustee for a one-half interest in the land itself. [See Dexter v. MacDonald, 196 Mo. 373, 394, 95 S. W. 359.]"

■ The decision quoted with approval the rule which has been followed by our Court that equity does not pretend to enforce verbal agreements in the face of the Statute of Frauds, and the person holding the legal title to real estate will not be decreed to be a constructive trustee unless there is something more in the transaction than the mere violation of a parol agreement. Accordingly, the mere refusal of a trustee to execute an express trust, or the denial of the existence of the trust by him, does not make a case for raising a constructive trust. [See, also, Parker v. Blakeley, 338 Mo. 1189, 93 S. W. (2d) 981, 990; Ferguson v. Robinson, 258 Mo. 113, 167 S. W. 447; Gates Hotel Co. v. C. R. H. Davis Real Estate Co., 331 Mo. 94, 52 S. W. (2d) 1011.] As to constructive trusts it is stated by Pomeroy: "In order that the doctrine of trust ex maleficio with respect to land may be enforced under any circumstances, there must be more than a mere verbal promise, however unequivocal, otherwise the Statute of Frauds would be virtually abrogated; there must be an element of positive fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated." [Pomeroy Equity Jurisprudence (4 Ed.), secs. 105-6; Leahey v. Witte, 123 Mo. 207, 220, 27 S. W. 402, 406; Parker v. Blakeley, supra.]

■ Appellant also claims that she is entitled to an interest in the farm because the parties entered into a partnership agreement to buy the farm and to sell and divide the profits. The pleadings do not sustain the claim. Furthermore it is now too late to advance such a theory as a basis for recovery, when the case was tried below on a different theory. In support of her claim under this theory, appellant cites the case of Sloan v. Paramore, 181 Mo. App. 611, 164 S. W. 662, which holds, in effect, that an interest in contingent profits which might be made from the future sale of real estate, is not an interest in the land itself. Such being the rule, under no consideration would appellant be entitled to the specific relief she prays for.

■ Appellant also complains of the appointment of a receiver and has appealed from the overruling of her motion to revoke such appointment. Upon the overruling of a motion for a new trial, the respondent applied to the trial court for the appointment of a receiver to take charge of the property pending further litigation. The trial court found that a receiver should be appointed "to supervise the management and planting of the crops, the income and expenses, and all other matters." Thereupon, the court entered its order appointing a receiver, and instructing him to take immediate possession of the farm and to take over its management. Section 998, Revised Statutes 1929, provides that a court shall have the power to appoint a receiver to preserve property pending any legal or equitable proceedings concerning the same. The exercise of this power rests within the sound discretion of the court. [State ex rel. Hampe v. Ittner, 304 Mo. 135, 263 S. W. 158; State ex rel. Mueller v. Wurdeman (Mo.), 232 S. W. 1002; Abramsky v. Abramsky, 261 Mo. 117, 168 S. W. 1178; State ex rel. Central States Life Insurance Co. v. McElhinney (Mo. App.), 90 S. W. (2d) 124.] From the facts in this case we believe that the Chancellor did not abuse his discretion and properly overruled the motion to revoke the appointment of the receiver.

From what we have stated above, it is clear that the appellant is not entitled to the relief prayed for and that the judgment of the Chancellor was correct and should be affirmed. It is so ordered. All concur.